HANNAH E. PIERCE, administratrix, *vs.* STATE NATIONAL BANK
OF BOSTON.

Suffolk.    December 2, 3, 1912.—May 24, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Bills and Notes,* Certificate of deposit.    *Bank.    Limitations, Statute of.*

The time within which a certificate of deposit (using that term in its proper sense)
  should be returned to the bank which issued it and a demand for its payment
  should be made is the time limited for the bringing of an action upon it against
  the bank.

*Whether* the time within which an action upon a certificate of deposit (using that
  term in its proper sense) should be brought against the bank which issued it
  is twenty years, as prescribed by R. L. c. 202, § 1, cl. 2, with regard to "actions
  upon bills, notes and other evidences of indebtedness issued by a bank," or six
  years, as prescribed by § 2 with regard to actions of contract other than those
  upon judgments and those described in § 1, was not decided in this suit in
  equity to collect the amount of such a certificate, where no demand for pay-
  ment of the certificate was made until thirty-six years after its date.

LORING, J.   This is a suit in equity * to collect the amount of a
certificate of deposit issued in 1859, on which a demand for pay-
ment was made thirty-six years later (to wit, on November 27,
1895), but not before, and where the suit to collect was begun
forty-seven years later (March 7, 1906).   The present suit had
its origin in a writ dated March 7, 1906, which by leave of court
was amended into this bill in equity.   It is based on the claim that
the State bank which issued the certificate (by name the Hide
and Leather Bank) was reorganized under the same name as a
United States bank (and so liable for the debts of the State bank
under the rule applied in *Atlantic National Bank* v. *Harris,* 118
Mass. 147) and that later the National Hide and Leather Bank
became consolidated with the defendant bank on terms which
made that bank liable for its debts.

The certificate is in the following words: "Certificate of Deposit.
$1324.   Boston, July 19, 1859.   Jacob Chase, Esq., has deposited
in the Hide and Leather Bank Thirteen hundred twenty four $\frac{}{100}$

---

\* Brought by a bill filed in the Superior Court on March 19, 1912,
and reserved and reported by *Jenney,* J., for determination by this court.

Dollars payable, on the return of this certificate, to his order endorsed on the same. [Signed] J. S. March, Cashier." The word "Original" appeared printed or written across the face of the certificate.

It was decided in *Shute* v. *Pacific National Bank,* 136 Mass. 487, that, while a certificate of deposit has for the most part the incidents of a promissory note, it differs from a promissory note payable on demand in at least one respect, namely: It is not overdue until after a demand for payment is made and so it is not subject in the hands of a subsequent holder to a set-off of notes due from the original payee under Gen. Sts. c. 53, § 10. For subsequent cases as to certificates of deposit see *Hunt, appellant,* 141 Mass. 515; *Schmidt* v. *People's National Bank,* 153 Mass. 550.

The purpose and use of certificates of deposit (using that term in the proper sense) is to transmit funds and make payments. In this respect certificates of deposit are like certified checks. See for example *Merchants' Bank* v. *State Bank,* 10 Wall. 604, 648, where the two are classed together. An example may be found in a case where a person has occasion to make a payment in his own city or town or to transmit funds to another city or to another country. He does not want to carry or send gold or notes which are a legal tender. Again, he cannot expect his own check to be taken in payment. Under these circumstances he deposits in a bank the sum to be paid or transmitted and procures a certificate of deposit (in the form set forth above), or he draws his check and procures it to be certified by the bank or he procures a cashier's check on a bank in the place where the payment is to be made. Then by indorsing the certificate of deposit the certified check or the cashier's check to the person to whom he wishes to make the payment or transmit the money, he effects his object with ease and safety. It is apparent from this that the function performed by a certificate of deposit is one which contemplates a presentation of it for payment within a short time. The bank has the use of the money deposited so long as the certificate is outstanding, while the person who holds the certificate gets no interest on the sum it represents. The general rule, therefore, is applicable, namely, that the time within which a demand must be made is the time limited for bringing an action. *Campbell* v. *Whoriskey,* 170

Mass. 63, 67. *Downer* v. *Squire,* 186 Mass. 189. *Whitney* v. *Cheshire Railroad,* 210 Mass. 263. The plaintiff has contended that the period of limitation applicable to a certificate of deposit issued by a bank is fixed by R. L. c. 202, § 1, at twenty years and not by R. L. c. 202, § 2, at six years. It is not necessary to decide whether this be so or not; no demand was made until thirty-six years after the date of the certificate; in either event the demand was too late.

There are to be found in the books instances where instruments have been issued in the form of certificates of deposit payable on demand, which serve a different purpose and are subject to a different rule. These are certificates which are issued for money borrowed and which carry interest. An instance is to be found in *McGough* v. *Jamison,* 107 Penn. St. 336. There the deposit was made in "Parker's Savings Bank" and a certificate like the certificate here in question was issued which bore interest at five per cent "if left six months." The purpose of a negotiable receipt for money borrowed is a continuing loan of money. Although the paper issued in that and similar instances is in its terms like a certificate of deposit, it is, speaking with accuracy, a negotiable receipt for money borrowed and not a certificate of deposit. The transaction is in substance the same as that in *Campbell* v. *Whoriskey, ubi supra,* and the result to be reached is not affected by the fact that the person with whom the deposit was made as an investment issued a negotiable receipt payable with interest in place of a non-negotiable one as was done in *Campbell* v. *Whoriskey.* For these reasons the same conclusion was reached in *McGough* v. *Jamison* that was reached in *Campbell* v. *Whoriskey,* namely, that the general rule did not apply and consequently that it was not necessary to make a demand within the statutory period for bringing an action. *Finkbone's appeal,* 86 Penn. St. 368, on the authority of which *McGough* v. *Jamison* was decided was in substance a similar case.

It follows that the bill must be dismissed with costs.

*So ordered.*

*E. B. Jackson,* for the plaintiff.

*E. G. McInnes,* (*H. M. Aldrich* with him,) for the defendant.